PACIFIC LIVE STOCK CO. v. HANLEY et al.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1912.)

No. 2,036.

WATERS AND WATER COURSES (§ 49*)—RIPARIAN RIGHTS—CONSTRUCTION OF DECREE.

A decree defining the rights of riparian owners in the waters of a river and its branches, prescribing their limitations, and enjoining defendants from exceeding the same, construed, and evidence of its alleged violation by defendants considered on a supplemental bill by complainant in aid of the enforcement of the decree.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 39, 40; Dec. Dig. § 49.*]

Gilbert, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States, for the District of Oregon; R. S. Bean, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Supplemental bill in equity by the Pacific Live Stock Company against W. D. Hanley, the William Hanley Company, H. C. Levens, and others. From the decree, complainant appeals. Modified and affirmed.

The respective parties to this appeal are not agreed as respects the scope and purpose of the bill filed in the court below by the complainant, which is the appellant here. It is therefore necessary to state the substance of the pleadings in so far as they concern the parties to this appeal. The bill was filed April 9, 1908, and is entitled "Supplemental bill in aid of final decree," and to it were made defendants, along with numerous other parties, the present appellees W. D. Hanley, William Hanley Company, and H. C. Levens. It alleged, among other things, that on the 3d day of October, 1899, it filed in the court below a bill against Hanley, Levens, and all of the other defendants named in the supplemental bill, except the defendants J. Sturtevant and William Hanley Company, by which original bill the complainant alleged, among other things, that it was the owner of certain lands specifically described, situated in Harney county, state of Oregon, which lands were along and adjacent to the east and west forks of a certain stream known as Silvies river, and that on and above the complainant's said lands numerous sloughs, minor channels, and swales put out from the main channel of the river and from its east and west forks, and that all the waters of said east and west forks of the river separated into many small branches, and that the waters of the river and of its forks, sloughs, swales, and branches, when not obstructed or diverted, spread over, irrigated, and subirrigated the complainant's said lands, thereby producing valuable crops of wild grass, without which irrigation the lands are barren and worthless; that the irrigating season extends from May 1st to July 20th of each year, and that certain predecessors in interest and grantors of the complainant had constructed certain dams and other works in and about certain channels of the said forks of said river which had been continuously maintained and used by them for the purpose of diverting large quantities of the waters of the river to and upon certain of the complainant's land described in the bill, for the irrigation thereof, and for the sustenance of live stock, except when such use of the dams and other works had been interrupted by the wrongful acts of the defendants to the bill therein set forth; that the complainant and its predecessors in interest had grazed and propagated many thousand head of cattle on the said land, for all of which purposes the waters of the said river were necessary and valuable; that, notwithstanding the complainant's alleged rights, the defendants to the original bill wrongfully entered upon the channel of the river and its forks above the complainant's lands, and wrongfully constructed and maintained divers dams in the channels, and also ditches leading therefrom, by means of which the water in the main channel of the river as well as in its forks was impounded and wholly diverted, to the complainant's wrong and injury, which alleged unlawful acts the defendants threatened and intended to continue unless enjoined from so doing, and the prayer was, among other things, "that the said defendants be perpetually enjoined and restrained from diverting any of the waters of said Silvies river, or of the east or west forks thereof, from their channels, or impeding the flow of any of said water down to and upon your orator's said lands, as said water had been wont to flow thereon when not interfered with by the defendants, and that each of them be required to remove their said dams from the channels of said river and the forks thereof, and be perpetually enjoined and restrained from rebuilding the same or in any manner obstructing the flow of said water."

The supplemental bill alleges that various of the defendants to the original bill, not necessary here to be named, made default, and that the said original bill was taken pro confesso as against them, and that, after the commencement of that suit, one of the defendants thereto, N. Brown, conveyed all of his interest in the subject-matter of it to J. Sturtevant, who was thereupon substituted as a defendant to the original bill in lieu of the said Brown, and that various other of the parties to the original bill were dis-

missed, and that the remaining defendants · to that suit, including W. D. Hanley, filed answers to the bill, to which answers the complainant filed its replication, and that thereafter the suit was heard upon its merits and a final decree entered thereon on the 10th day of December, 1901, in and by which decree the court found, among other things, that the complainant was the owner of large tracts of land specifically described in the decree, and further found that on and above those lands numerous sloughs, minor channels, and swales put out from the main channel of Silvies river and its two main forks, known as the east and west forks, and that the waters of the said forks, sloughs, swales, and branches, when not obstructed or diverted, in their natural course flowed upon, spread over, irrigated, and subirrigated the complainant's said lands, thereby producing abundant and valuable crops of wild grass, and that without such water the complainant's said land would not produce vegetation of any value, and by which original decree it was, among other things, adjudged that the said W. D. Hanley, H. C. Levens, and various other parties not necessary to be mentioned be, and they were, "perpetually enjoined and restrained and strictly inhibited from diverting any of the water of the Silvies river and of said east and west forks thereof from the channels thereof, and from impeding the flow of any of said water to and upon said lands of your orator as said water had theretofore been wont to flow thereon when not interfered with by said defendants and said intervener, and that they remove all dams in the channels of said river or of said forks thereof, and that they be perpetually enjoined and restrained and strictly inhibited from rebuilding the same and from in any manner obstructing the flow of the waters of said river and of said forks thereof, save and excepting only to the extent and at the times and in the places and for the purpose set forth in said decree"; and further adjudged that said decree should run in favor of the complainant, its successors, and assigns, and against the defendants and their heirs, personal representatives, successors, and assigns.

The supplemental bill further alleges that in and by the original decree the court found that the defendant W. D. Hanley owned the following described lands situated in the said Harney county, to wit: "All of sections 21 and 27, all of section 22 except the S. ½ of the S. W. ¼, the W. ½ of section 26, all in township 23 S., range 31 E., Willamette meridian"; that he leased and was in possession of all of sections 23, 25, and 35 of the said township and range, and that since the entry of the original decree he became the owner of the sections so leased; that at the time the original decree was entered Hanley had one dam in the east fork of said river in section 21, township 23 S., range 31 E., Willamette meridian, and maintained two ditches leading from that fork immediately above the dam, one of which ran southeasterly from the east side of the said fork, and the other along the west side thereof for a short distance, onto the above-mentioned section 27; that by the original decree Hanley "was allowed to divert and use so much of the waters of said Silvies river as might be necessary to irrigate said sections 27, 35, 21, 23, and 25, the N. ½ of section 22, the N. ½ of the S. ½ of section 22, and the S. ½ of the S. E. ¼ of section 22, and the W. ½ of section 26 in said township 23 S., range 31 E, Willamette meridian, and said defendant was allowed by said decree to maintain said dam and ditches and divert waters thereby for irrigating said lands only, and was allowed by said decree to maintain said dam and divert waters thereby only for the period beginning on the 5th day of May and ending on the 1st day of July of each year, and by said decree said defendant was permitted and allowed to maintain said dam and said ditches only as the same were constructed and built at the time of the entry of said decree; and it was further ordered and adjudged by said decree that if at any time and while said dam is open so that it does not obstruct the flow of the water in said river and from natural causes the waters of said east fork of Silvies river shall overflow its banks upon the land of said defendant, or naturally run through either of the ditches of said defendant leading from said dam above described. said defendant shall have the use and enjoyment of so much of the said water of said river as may come upon his land in the manner aforesaid.

and during such time as the same may run thereon from natural causes and without any obstruction of the channel of said river."

The supplemental bill further alleges that at the time of the entry of the original decree Hanley had a ditch leading out of the said east fork of Silvies river on the east side thereof in the said section 27 about 1½ miles below the said dam and extending in a southeasterly direction to the land of the complainant in the southeast quarter of section 26, township 23 S., range 31 E., Willamette meridian, which ditch was built by Hanley to be used solely for the purpose of draining the water from certain of his lands above described, and was not intended to be used by him for the purpose of irrigation, and that by the said original decree the said defendant Hanley "was permitted and allowed to maintain said last-mentioned ditch across said section 27 until it enters into and upon said land of your orator in the southeast quarter of said section 26, for the purpose only of draining the water from the surface of the lands of said defendant above described, and not for the purpose of irrigation; and, except in the manner, and to the extent, and for the purposes aforesaid, the said defendant Hanley, and his attorneys, agents, servants, and employés, were by said decree perpetually enjoined and restrained, and strictly inhibited, from diverting any of the waters of Silvies river or of said east or west forks thereof, from the channels of said river or of said forks thereof, and from impeding the flow of any of said water to and upon the lands of your orator, as said water had theretofore been wont to flow thereon when not interfered with by the defendants and said intervener, and said defendant Hanley was required by said decree to remove any and all dams which he might have in the channels of Silvies river or of said forks thereof, and was perpetually enjoined and restrained and inhibited from rebuilding the same, and was enjoined and restrained and strictly inhibited from in any manner obstructing the flow of the waters of Silvies river and of said forks thereof."

The supplemental bill further alleges that, after the entry of the said original decree, Hanley caused the defendant William Hanley Company to be incorporated under the laws of the state of Oregon, of which company he became president and manager, and on or about March 27, 1905, conveyed to it all of his above-described lands and all of the rights in the waters of the said Silvies river awarded to him by the original decree, all of which property the said company has ever since claimed and owned.

The supplemental bill also alleges, among other things, that in and by the said final decree the court found that the defendant H. C. Levens owned the following described lands in the said county of Harney, state of Oregon, to wit: "The W. ½ of the N. W. ¼ and the S. W. ¼, and lots 1 and 2 in section 20, and that he leased and was in the occupation and enjoyment of all of section 19, all in township 23 S., range 31 E., Willamette meridian;" that said Levens had one dam in the west fork of the said Silvies river in the N. W. ¼ of said section 20, and one ditch leading therefrom; that by the said original decree Levens was "allowed to maintain said dam whenever the waters in said river at the head of said dam shall so recede that the surface of the water shall be two feet below the footboard of the top of the structure of said dam, and from said time until the 20th day of July of each year, and may retain the waters of said Silvies river, and may divert and use so much thereof by means of said dam and ditch leading therefrom as shall be necessary to irrigate the W. ½ of the N. W. ¼ and the S. W. ¼, and lots 1 and 2 of section 20, township 23 S., range 31 E., Willamette meridian, during the aforesaid period, and also so much as may be necessary to irrigate during said period section 19 in said township and range, so long as the same shall be leased to the said defendant and as he shall be in possession and enjoyment thereof, and that, should the waters of Silvies river during any year not recede by the 15th day of May at the head of said dam so that the surface of the water at said point shall be two feet below the said footboard of said dam, then the said Levens may maintain his dam in the manner aforesaid from the 15th day of May until the 20th day of July of each year, and said defendant was also allowed, while his dam was not maintained, but was open so that the waters of the west fork of Silvies river

may flow therethrough without obstruction thereby, to use the waters of Silvies river which would flow through his land, or any thereof, either by overflowing the banks of said stream, or by running through the ditch of the said Levens as the same was then constructed and maintained, and said defendant was strictly enjoined and prohibited by said decree from diverting any water from Silvies river, or from any of the channels thereof, or from obstructing the flow of the waters in Silvies river or any of the channels thereof, except during the period and to the extent and in the manner above set forth."

The supplemental bill further alleges that at all times since the entry of the said original decree the complainant has continued to be and still is the owner of all of its therein described lands, and has continued to be, and still is, the owner and entitled to the benefits of all the waters flowing in the said river and in its forks, channels, and branches, "excepting only to the extent, and at the times and in the places and for the purposes said defendants" Hanley, Levens, and others not necessary to be named are entitled under and by virtue of the said original decree to impede the flow of the said waters and divert and use the same.

The supplemental bill further alleges that, notwithstanding the said original decree, the defendants W. D. Hanley and William Hanley Company have, in violation of the original decree and of the complainant's rights thereunder, built and do now maintain a new dam in the east fork of Silvies river at the same point therein at which the old dam was located, which new dam impedes the flow of the water in said fork, and causes the same to flow out of the fork to an extent and in a manner not permitted by the said original decree; that the new dam is so built and maintained that it raises the surface of the water in the said fork of the said river to a higher level than the former dam did; that during the lowest stages of the flow of the water in the said fork of the said river, namely, after about July 1st in each year, said new dam causes a large volume of the said water to flow into and through the ditch on the east side of the said fork leading from the said dam, thereby wholly depriving the complainant of the use thereof, contrary to its rights and of the said original decree; that said new dam was constructed about two years prior to the filing of the supplemental bill, and that until it was so constructed, and so long as the old dam was maintained in the manner in which it was at the time of the entry of the original decree, the waters of the said east fork of Silvies river did not flow through either of the ditches leading from the said dam at any time after July 1st of any year and before the higher spring flow of the following year, and that neither of the said defendants Hanley and William Hanley Company diverted any water from the channel of said fork of said river by means of the said old dam or by means of either of the said ditches in any year subsequent to July 1st, after the entry of the said original decree, until the said old dam was removed and said new dam was built in its place; that notwithstanding the said W. D. Hanley and his assigns were by the original decree enjoined from maintaining the ditches leading from the said dam in any manner other than the same were maintained at the time of the entry of that decree, they have, in violation thereof and of the complainant's rights, greatly enlarged and extended the said ditch, so as to carry a much larger quantity of water at all times than it carried at the time of the entry of said original decree, and so that the waters which flow into and through the said ditch should be carried beyond the lands upon which by the final decree Hanley and his assigns were allowed to use them; that the said ditch has been extended by Hanley and the William Hanley Company to a point in the S. W. ¼ of section 24, in township 23 S., range 31 E., Willamette meridian, to a certain slough known as Embree slough, and a large part of the waters diverted from said east fork of the river are emptied by the said defendants by means of said ditch into that slough; that the waters flowing in the said Embree slough, if not interfered with by the said defendants, naturally flow back into the east fork of the river at a point above the larger portion of the complainant's land, and thence over and upon its lands; that it has been and is the design of the defendants Hanley and William Hanley

Company to deprive the complainant of all of the water which naturally overflows the latter's lands or is diverted from the said east fork of the river by means of the said dam and ditches, and especially by means of the said ditch leading from the east side of the said fork immediately above the said dam, by preventing the return of any of the water to any of the channels of the river, and by using the said water upon lands upon which the said defendants are not entitled to use it under and by virtue of the said final decree; that, in pursuance of such purpose, the said defendants constructed and now maintain large dykes or levees in the said Embree slough, and in other sloughs, waterways, and depressions, on the lands of the said William Hanley Company above described, and on other lands adjoining or in the vicinity, and by means of such dykes and levees have drained large volumes of water out of the said sloughs, waterways, and depressions, and forced the same to flow over and upon lands not riparian to the Silvies river or to any of its channels, thereby wholly depriving the complainant of the said water; that at the time of the entry of the said final decree there were and now are a number of sloughs, depressions, and natural waterways running through the said lands of the William Hanley Company which are allowed to be irrigated under the said final decree, by means of which sloughs, depressions, and natural waterways the waters not required for such irrigation were gathered and naturally returned to the said east fork of the river at a point or points above the larger body of the complainant's land, and continued so to return until about two years prior to the filing of the supplemental bill, when the said Hanley and William Hanley Company dammed all of the said sloughs, depressions, and waterways for the purpose of preventing the return of the said surplus water to the lands of the complainant, and for using the same on lands on which the said defendants are not allowed by the said final decree to use the same, and that the said defendants now maintain the said dams for that purpose and thereby prevent the said surplus water from returning to the complainant's lands, and that the said defendants have made no provision for the return of any of the said surplus water so diverted by them to the said river or to any of its channels; that the said Hanley and William Hanley Company have so negligently maintained said ditch on the west side of the east fork of the river that large quantities of water have escaped, and do now escape, from the said ditch into the county road, and have been thereby carried for about four miles from the said east fork upon and across lands not riparian to the river or to any of its channels, and that the said defendants have wholly failed to provide any means by which such waters could be returned to the river or to any of its channels, and have wholly failed to return any of such waters, but have allowed the same to go to waste and to be wholly lost to the complainant; that since the building of the said new dam in the east fork of the river by the said Hanley and William Hanley Company a much greater quantity of water has been diverted by the said new dam and the said ditch from the said east fork, and a larger quantity of water allowed to escape and be wasted, and for a longer period each year, to wit, until long after July 1st of each year, than was the case before the said new dam was built; that at and prior to the time of the entry of the said final decree no water diverted by means of the said ditch was allowed to escape or did escape therefrom, and that no water was diverted from the east fork of the said river by means of the said ditch after the 1st day of July of any year, until said new dam was constructed; that since the said final decree was entered, and particularly since the building of the said new dam, the defendants Hanley and William Hanley Company have, in violation of the said final decree, diverted from the said east fork of the river water largely in excess of the quantity necessary to irrigate their said lands, and that 25 cubic feet of water per second is amply sufficient to divert from the said river for the purpose of irrigating the said lands of the said defendants; that notwithstanding the said defendant W. D. Hanley and his assigns are by the said final decree allowed to maintain the ditch leading from the east fork of Silvies river, on the east side thereof, in section 27, township 23 S., range 31 E., Willamette meridian, for the purpose only of draining water from the surface of the said lands of the said defendant

William Hanley Company, and not for the purpose of irrigation, the said defendants W. D. Hanley and William Hanley Company have for several years last past so used and maintained the said ditch and certain obstructions in the channel of the said fork of the river below the head of the said ditch, and now maintain the same, as to cause substantially all of the water flowing in the said channel at the head of the said ditch to flow into and through the ditch and away from the riparian lands of the complainant; that the said defendants have so maintained the said ditch and obstructions as to cause substantially all of the water flowing in the said channel at the head of the said ditch after the 1st day of July in each year, and during the summer, fall, and winter months thereof, the same being the period of the lowest stages of the flow of water in the said Silvies river and being long after the water on the surface of the lands of said Hanley and William Hanley Company was and is entirely drained therefrom, to flow into and through the said ditch, in consequence of which the channel of the said east fork of the river at many places below the head of the said ditch became and is entirely dry, and the complainant has been frequently wholly deprived during the said months of any water for domestic use, for watering stock on its lands below the head of said ditch, particularly in sections 1, 2, 11, and 12, in township 24 S., range 31 E., Willamette meridian, and in section 7, township 24 S., range 32 E., Willamette meridian, the same being part of the lands of the complainant described in the said final decree; that prior to the entry of the said final decree no water from the said fork of said river entered or ran through the said ditch after the 1st day of July of any year until the higher flow of water occurred in the following spring; that, after the entry of said final decree, said Hanley and William Hanley Company deepened the said ditch, particularly at the head thereof, and have enlarged the headgate at the head thereof, and have also built and maintained a dam in the channel of said east fork of Silvies river at a point in the N. W. ¼ of section 35, township 23 S., range 31 E., Willamette meridian, and also raised the elevation of the bed of the said fork of said river at said point, and also built and maintained another dam in said channel at a point a short distance below said dam last above mentioned; that by means of the said dams the said defendants have increased, and now increase, the flow of water into the said ditch, and have obstructed and now obstruct the flow of water down to the lands of the complainant; that the said defendants have also since the entry of the said final decree constructed and maintained and now maintain a checkgate in the said ditch in the S. W. ¼ of section 26, in said last-mentioned township and range, and a tapgate in connection therewith, whereby water has been taken by the said defendants, and, unless restrained by the court, will be taken by them from the said ditch for the purpose of irrigating lands of the said defendants Hanley and William Hanley Company, contrary to the provisions of the said final decree; that the diversion of water at any time from the said east fork of the river into the said ditch other than when necessary to drain water from the surface of said lands mentioned in said final decree, is contrary thereto, and in violation of the purpose for which said defendants are permitted by the said final decree to maintain said ditch; that the water on the surface of the said lands can be and is drained therefrom in every year long prior to the 1st day of July; that, in consequence of the said acts of the said defendants Hanley and William Hanley Company, the complainant has been deprived of large quantities of the waters of the said river which would otherwise naturally flow to and upon the complainant's lands described in the said final decree and to which it is entitled thereunder, by which acts of the said defendants the crops of the complainant have been greatly diminished and damaged, and the complainant deprived of the use of the said water for domestic purposes and for watering its live stock.

The supplemental bill further alleges that, notwithstanding the said final decree, the defendant H. C. Levens has since the entry of the said decree diverted by means of his dam and ditch leading from the west fork of the river a quantity of water largely in excess of what is necessary to irrigate the lands which, by the said final decree, he was permitted to irrigate, and

has allowed said water to flow across his lands to nonriparian lands of others, and to be taken and used by them and to be lost to the complainant, and has wholly failed to provide any means for returning any of the waters diverted by him and not consumed in irrigating his said lands to any of the channels of the river above the lands of the complainant, in consequence of which acts the complainant has been deprived of large quantities of the waters of the said river which would naturally flow to and upon its lands, and to which, under the said final decree, it is entitled, which acts of the said defendant Levens will continue unless prevented by the court.

The prayer of the supplemental bill is, among other things, that Hanley and the William Hanley Company, their agents, etc., be required to remove the dam constructed since the entry of the said final decree, and rebuild and maintain the same in the same condition in which it was at the time of the entry of that decree, so that the dam will not obstruct or impede or affect the flow of water in the east fork of the river in any manner or to any extent different from what the dam did at the time of the entry of the final decree: that the said defendants be required to restore and maintain the ditch leading from the dam on the east side of the said east fork of the river to and in the same condition in which the ditch was at the time of the entry of the final decree, so that the said ditch will not carry a larger quantity of water at any time than it carried at the time of the entry of the final decree, and so that it will not carry any water to any lands on which the said defendants are not allowed by the said final decree to use the said water: that they be required to restore and maintain the bed and banks of the said east fork of the river above and below the said dam in such manner that no water may escape from the said river except in the manner and to the extent permitted by the said final decree; that they be required to remove all the dykes and levees in Embree slough and in all other sloughs, depressions, and waterways, whereby the water which naturally overflows or is diverted by the said defendants in accordance with said final decree, and which is not used by them on lands on which they are thereby allowed to use them, is prevented from returning to the channel of the said river above the lands of the complainant, and that they restore and return to the channel of the said river in such manner that the same may reach the complainant's lands described in the said final decree all waters diverted by the said defendants or either of them from the river in accordance with the said final decree, and not consumed in the irrigation of their said lands, and provide such means as will effectually return the said surplus water to the channels of the said river above the lands of the complainant; and that they be required to so maintain the ditch on the west side of said east fork of Silvies river as to prevent any water escaping from said ditch into the county road referred to, or elsewhere escaping from said ditch, and that they provide such means as will effectually return the water which they are allowed by the said final decree to divert through said ditch and which is not consumed by them in accordance with the said final decree to the channel of the said river above the complainant's lands, and that they be prevented from maintaining or using any dykes or levees which will force any water from the said river or any of its channels to flow upon any lands upon which the said defendants are not allowed by the said final decree to use any of the said water, and that they be enjoined from taking from the river or any of its channels more water than is sufficient to irrigate the lands which they are allowed by the said final decree to irrigate, and that the court determine how much water is necessary to irrigate their said lands; and that they be required to restore the ditch leading from the said east fork of the river in section 27, township 23 S., range 31 E., Willamette meridian, and the headgate thereof, and the channel of the said fork of the said river above and below the head of the said ditch, to the condition in which the same were at the time of the entry of the said final decree, and particularly that they remove the dams in the channels of the said fork of the said river in the N. W. ¼ of the N. W. ¼ of section 35, in said last-mentioned township and range, and all other obstructions placed by them or either of them in said channel in that vicinity; and that they

be enjoined from using the said ditch at any time for any purpose other than for draining water from the surface of the lands of the said William Hanley Company; that they be required to remove the checkgate and the tapgate constructed by them in the said ditch; that they be enjoined from allowing any water to flow out of the said east fork of Silvies river into the said ditch at any time except such times when, if at all, the drainage of the said lands is aided or promoted thereby; that they be compelled to erect and maintain a suitable gate or other contrivance at the head of the said ditch to prevent the flow of any water from the said fork of the said river into the said ditch, excepting at such times when, if at all, the drainage of said lands is aided or promoted thereby, and that the court determine when, if at all, the said defendants may be permitted to allow any water to flow from said fork of said river into the said ditch for the purpose of aiding or promoting the drainage of the said lands; that the defendant H. C. Levens be enjoined from diverting from the said river or from any of its channels any greater quantity of water or at any other time than he is entitled to divert and use the same therefrom in accordance with the said final decree, and that the court fix and determine the quantity of water he is entitled to so divert and use under the said final decree, and that he be enjoined from using any of the said water upon any lands on which he is not allowed by the said final decree to use the same, and that he be enjoined from allowing any of the said water to escape or flow onto the lands of others, or to be lost or wasted, and that he be required to restore all water diverted by him as allowed in said final decree to the channel of the said river above the lands of the complainants; that he be required to so maintain his dam and ditch and the banks and channels of the said river adjacent thereto that no greater quantity of water will flow out of the said river at that point than the court may determine the said defendant is entitled to divert and use under the said final decree.

Except in respect to the record in the original suit, the answer of the defendants Hanley, William Hanley Company, and Levens put in issue the averments of the supplemental bill in so far as concerns the alleged unlawful acts on their part, to which answer the complainant filed a replication.

Wirt Minor, of Portland, Or., and Edward F. Treadwell, of San Francisco, Cal., for appellant.

Williams, Wood & Linthicum and Emmons & Webster, all of Portland, Or., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The case shows that Silvies river rises in the mountains many miles northerly of a valley known as Harney Valley, in the state of Oregon, and flows southerly. About five miles from where it enters the valley, and on the north side of section 20, township 23 S., range 31 E., Willamette meridian, the river divides into two forks, known as the "east" and "west" forks, and then flows on for about 20 miles into a lake called Malheur Lake. The river forks on the land of the defendant Levens, Hanley's lands beginning on the east fork a short distance below that of Levens, and extending down and along the east fork for about four miles. The complainant's lands are still further down and on both forks of the river.

In its original bill, as will be seen from the statement of the case, the complainant alleged its ownership of those lands, and also alleged the acts of the defendants thereto which it claimed interfered with its rights. From those allegations it will be seen that they all related to

the waters of Silvies river and its east and west forks, and that the only acts of Hanley and Levens there complained of related to dams placed in those forks of the river and to ditches tapping them, by which the waters of the river were diverted. The supplemental bill expressly alleges that during the progress of the trial of the original suit the parties to it entered into an agreement defining their respective rights, which agreement was the basis of the original decree, for an alleged violation of which the present suit was brought. Obviously, therefore, the first important thing to do is to ascertain what rights were by that decree adjudged to the complainant and to the defendants Hanley and Levens, what those defendants were permitted to do with respect to the waters there in question, and what they were inhibited from doing. Turning to the original decree, as it is expressly stated in the present bill, we see:

(1) That it, among other things, adjudged that the said W. D. Hanley, H. C. Levens, and various other parties not necessary to be mentioned be, and they were, "perpetually enjoined and restrained and strictly inhibited from diverting any of the water of Silvies river and of said east and west forks thereof from the channels thereof, and from impeding the flow of any of said water to and upon said lands of your orator as said water had theretofore been wont to flow thereon when not interfered with by said defendants and said intervener and that they remove all dams in the channels of said river or of said forks thereof, and that they be perpetually enjoined and restrained and strictly inhibited from rebuilding the same and from in any manner obstructing the flow of the waters of said river and of said forks thereof, save and excepting only to the extent and at the times and in the places and for the purposes set forth in said decree"; and further adjudged that said decree should run in favor of the complainant, its successors and assigns, and against the defendants, their heirs, personal representatives, successors, and assigns.

(2) The court having found that Hanley owned the following described lands, to wit: "All of sections 21 and 27, all of section 22 except the S. ½ of the S. W. ¼, the W. ½ of section 26, all in township 23 S., range 31 E., Willamette meridian"—that he leased and was in possession of all of sections 23, 25, and 35 of the said township and range, and had one dam in the east fork of said river in section 21, township 23 S., range 31 E., Willamette meridian, and maintained two ditches leading from that fork immediately above the dam, one of which ran southeasterly from the east side of the said fork, and the other along the west side thereof for a short distance, onto the above-mentioned section 27, he was by the original decree "allowed to divert and use so much of the waters of said Silvies river as might be necessary to irrigate said sections 27, 35, 21, 23, and 25, the N. ½ of section 22, the N. ½ of the S. ½ of section 22, and the S. ½ of the S. E. ¼ of section 22, and the W. ½ of section 26 in said township 23 S., range 31 E., Willamette meridian, and said defendant was allowed by said decree to maintain said dam and ditches and divert waters thereby for irrigating said lands only and was allowed by said decree to maintain said dam and divert waters thereby only for the

period beginning on the 5th day of May and ending on the 1st day of July of each year, and by said decree said defendant was permitted and allowed to maintain said dam and said ditches only as the same were constructed and built at the time of the entry of said decree; and it was further ordered and adjudged by said decree that if it at any time and while said dam is open, so that it does not obstruct the flow of the water in said river, and from natural causes the waters of said east fork of Silvies river shall overflow its banks upon the land of said defendant, or naturally run through either of the ditches of said defendant leading from said dam above described, said defendant shall have the use and enjoyment of so much of the said water of said river as may come upon his land in the manner aforesaid, and during such time as the same may run thereon from natural causes and without any obstruction of the channel of said river."

(3) In respect to the ditch built by Hanley for drainage purposes and tapping the east fork of the river on section 27, the said original decree provided:

"That the said W. D. Hanley may maintain his ditch constructed across a portion of the land above described leading out of the east fork of Silvies river on the east side thereof on the S. ½ of section 27, above described, and extending southeasterly until it enters into and upon the land of the complainant on or near the S. W. ¼ of the S. E. ¼ of section 26, township 23 S., range 31 E., W. M., but shall maintain said ditch for the purpose of draining water from the surface of the land above described, and not for the purpose of irrigation. If at any time and while the dam of the said W. D. Hanley is open so that it does not obstruct the flow of the water in said river, and from natural causes the waters of said east fork of said Silvies river shall overflow its banks upon the land of the said W. D. Hanley, or naturally run through either of the ditches of the said W. D. Hanley leading from the dam of the said W. D. Hanley first above described (the 21 dam), said defendant W. D. Hanley shall have the use and enjoyment of so much of the said water of said river as may come upon his land in the manner aforesaid, and during such time as the same may run thereon from natural causes and without any obstruction of the channel of said river."

(4) The original decree also provides as follows:

"That the defendant H. C. Levens may maintain his dam in the west fork of Silvies river where the same is now constructed and built in and across said river in section 20, township 23 S., range 31 E., Willamette meridian, whenever the waters in said river at the head of said dam shall so recede that the surface of the water shall be 2 feet below the footboard on the top of the structure of said dam, which footboard is 6 7/12 feet above the board bottom of said dam, and from said time until the 20th day of July of each and every year, and that the said defendant may retain the waters of said Silvies river and may divert and use so much thereof by means of his said dam and ditches now leading therefrom as shall be necessary to irrigate the W. ½ of the N. W. ¼ and the S. W. ¼ and lots 1 and 2 of section 20, township 23 S., range 31 E., Willamette meridian, during the period aforesaid, and also as much as may be necessary to irrigate during said period section 19, in said township and range, so long as the said defendant said H. C. Levens' lease thereon shall continue, and as he shall be in possession and enjoyment thereof, and, should the waters of Silvies river during any year not recede by the 15th day of May at the head of the said dam of said Levens so that the surface of the water at said point shall be 2 feet below said footboard of said dam, then the said Levens may maintain his dam in the manner as aforesaid from the 15th day of May until the 20th day of July of said year. If at any time while the dam of the said defendant H. C.

Levens is not maintained and while the said dam is open so that the water may flow therethrough without obstruction thereby the waters in Silvies river where the same flow through the above-described land, or any thereof, shall be of such height that any portion of such waters shall overflow any of the lands of the said H. C. Levens above described, either by overflowing the banks of said stream, or by running through the ditch of the said H. C. Levens as the same is now constructed and maintained, the said defendant H. C. Levens shall have the use of such water during the time that the same may so flow upon his lands, and so long as the water may so flow upon his lands without let or obstruction from his dam."

These provisions of the original decree seem to us quite clear. The rights conferred thereby on Hanley and Levens related only to the waters of Silvies river and its east and west forks, and to the ditches tapping those forks and the dams placed therein. No other interference with the complainant's alleged rights was charged in the bill in the original suit against those defendants than such as grew out of those dams and ditches. No mention was made in either the pleadings or decree in that suit of either the Foley slough or the Embree slough, both of which, according to the evidence in the present suit, were well and distinctly known by name in the community, the former of which puts out from the river on its east side about 10 miles above where the river forks. This slough has a wide and deep channel for a long distance, but gradually loses its depth toward the south, and finally disappears on Hanley's lands a little above where Embree slough commences. The bed of Foley slough, being higher than the bed of the river, carries no water except at times when the water of the river is high, but in flood times it carries more water than does the river itself. As has been said, no mention was made in either the pleadings or decree in the original suit of either the Foley slough or the Embree slough. The prayer of the bill in that case was, among other things, that the defendants be perpetually enjoined "from diverting any of the water of Silvies river or the east or west fork thereof from their channels or impeding the flow of any of said water down to and upon your orator's said lands as said water has heretofore been wont to flow therein when not interfered with by the defendants, and that said defendants and each of them may be required to remove their said dams from the said channels of Silvies river and said forks thereof, and may be perpetually enjoined and restrained from rebuilding the same or in any manner obstructing the flow of said water," and the inhibition portion of the original decree against all of the defendants thereto, including Hanley, was that they be perpetually enjoined "from diverting any of the water of Silvies river and any of the water from the east fork of Silvies river and any of the water from the west fork of Silvies river, from the channels of said rivers, and from the channels of each of said rivers, and that they be and they and each of them are perpetually enjoined and restrained and strictly inhibited from impeding the flow of any of said water to and upon the lands of the complainant hereinbefore described as the said water has heretofore been wont to flow thereon when not interfered with by the said defendants and by the said intervener,

either jointly or severally, and that they be and they are, and that each of them be and he is, required to remove all and any dams which they or either of them may have, or which any one of them may have, in the channels of Silvies river or in the channels of the east fork of Silvies river or in the channels of the .west fork of Silvies river, and that they be and they are and that each of them be and each of them is hereby perpetually enjoined and restrained and strictly inhibited from rebuilding the same, or any thereof; and that they be and they are, and that each of them be and each of them hereby is, perpetually enjoined and restrained and strictly inhibited from in any manner obstructing the flow of the waters of Silvies river and from in any manner obstructing the flow of the waters of the east fork thereof and from in any manner obstructing the flow of the waters in the west fork thereof, and from obstructing the flow of the waters of said rivers, or any thereof, in all and in each of the channels thereof, save and except as is in this decree more particularly set forth."

There is not only nothing in any of these provisions in terms relating to the well-known Foley slough, but nothing indicating any intention that they should be held to apply to it. On the contrary, there is among the evidence in the present suit some testimony tending to show that the original suit was never intended to apply to it. The witness Gilcrest, who was at the time of the bringing of that suit and for years had been the superintendent of the appellant, having charge of its business in Harney county, testified in the present suit that he gave the solicitor who brought the original suit much of the information upon which it was based, and in the course of his testimony we find the following:

"Q. You were not very well acquainted with the Foley slough in 1900, when you testified here in this case, were you? A. Yes; pretty familiar with it.

"Q. You remember to have testified in that case? A. I do.

"Q. Didn't you testify then that Foley slough went into Nine Mile slough, and went away over to Saddle Butte? A. I did so testify, and corrected my testimony.

"Q. Yes; after Mr. Cronin had told you that it didn't. A. Yes; and I was entirely honest in my testimony at the time.

"Q. I haven't the slightest doubt of that, but you did not know. You not only didn't know, but you had a whole lot of misinformation, didn't you? A. No; it wasn't misinformation. It was my own failure to have followed the slough channels down to their termination.

"Q. At least, if it was no misinformation it was a very wrong conception of it, wasn't it? A. Yes, sir; it was a wrong conception of where the Foley slough water finally went. I did not know at that time exactly where it did go, a large part of it.

"Q. Yes. And from the time you first came here and got acquainted with these properties and this water here up until the time Mr. Cronin told you in 1900, after you testified, you always thought that the water was delivered away over east there and never got back to the river at all, didn't you? A. I thought that the water of Foley slough entered the Nine Mile slough or Poison Creek slough in the valley.

"Q. And carried a vast volume of water away from the river and it never got back? A. That was my belief at the time.

"Q. And it was only after you testified and then talked to Mr. Cronin about it, or he talked to you about it, that you found you were entirely wrong? A. I found I was wrong in that testimony."

Embree slough, it appears from the record, commences on Hanley's land a short distance below where the banks of Foley slough disappear; and across Embree slough and its branches Hanley built dams and dikes. Indeed, it seems from the evidence he maintained some of them at the time of the commencement of the original suit, no mention of which, however, was made in the original bill of complaint. To the extent that such dams and dikes were necessary to irrigate the land of Hanley in sections 21, 22, 23, 25, 26, 27, and 35 of township 23 S., range 31 E., Willamette meridian, Hanley was in our opinion clearly entitled to build and maintain such obstructions; for by the original decree, as has been seen, he was expressly given the right to maintain his dam in the east fork of Silvies river as the same was then constructed in section 21, and to maintain his ditches leading from that dam in their then condition, and by means of that dam and those ditches to retain and divert the waters of Silvies river from the 5th of May to the 1st day of July of each year, and use so much thereof as shall be necessary to irrigate his said lands in the said township 23. The record shows that the purpose for which the water was necessary for Hanley's land, as well as that of the complainant, was the growing of natural grasses for the use of stock, which use necessarily required the spreading of the water over the ground. And, as the record also shows that Hanley's said land was not level, but contained numerous depressions which run into and form Embree slough and its branches, the building of dams or other impediments to the flow of the water in that slough in order to hold the water back until it overflowed the banks of the slough, and covered all of the surface of the land authorized to be irrigated with it, was a proper, if not the only, way in which he could avail himself of the right conferred upon him by the decree. Of course, in the exercise of that right good faith will always be required by the courts, and the right only extends to the reasonably necessary use of the water for the proper irrigation of the lands specifically described, and confers upon Hanley no right to carry that water beyond the boundaries of his own land. When that use is satisfied, the water can no longer be withheld by him or those holding under him, but must be allowed to flow naturally back to the river by way of the Embree slough and its branches; for not only is there no provision in the original decree requiring such water to be returned to the river in any other way or at any other point, but the record shows that the slope of the ground is such that the Embree slough is its natural and only course back to the river. The court below held that only one of the dams erected by Hanley in the Embree slough and its branches had the effect of diverting any of the water so used by him beyond his own land, and that was the dike erected in the N. E. ¼ of section 25, which the decree appealed from rightly directs to be removed.

We are also of opinion that the trial court was right in its conclusion that the extension by Hanley after the entry of the original decree of the 21 ditch was not a violation of that decree, as such extension was necessary to enable him to use the water thereby authorized

in the irrigation of the lands specifically described in the decree; and the record in the present case shows that it was so held by the judge who rendered the original decree on contempt proceedings brought against Hanley for a violation thereof in so doing.

It is urged on the part of the appellant that since the entry of the original decree Hanley rebuilt the dam in the east fork of the river in section 21, and made it a greater obstruction to the flow of the water of the river than it was when that decree was rendered, and also enlarged the ditch leading from that dam on the east side of the river, by both of which means he diverted more water from the river than is authorized by the original decree.

The evidence shows that in 1906 the condition of the old dam had become such as to make its repair necessary, and it was accordingly repaired or rebuilt under Hanley's direction. We have read the testimony of the complainant's witnesses Cronin, Clark, and Mace as to the building of the old dam, and that of Hanley's witnesses McLaren and Forbes, and of Hanley himself, in respect to the rebuilding of the dam, and, like the court below, we are unable to find from it that the dam was so repaired as to be any more of an obstruction to the natural flow of the river than was the original dam.

The contention that the 21 ditch extending easterly from that dam has been by Hanley so deepened since the original decree as to divert more water from the river than was thereby authorized we also think without merit. As a matter of course, the ditch could carry no more water from that point on the river than could come through its headgate. The man who built the headgate about the year 1898 testifies that it has never been changed, as does Hanley; and the trial judge says in his opinion in respect to the headgate and the alleged deepening of the 21 ditch:

"Nor do I think the evidence shows that the ditch has been deepened, to the injury of the complainants. Hanley and his employés who have used it for irrigation purposes and consequently have been familiar with it since the decree all testify that it is now practically in the same condition that it was at that time, and that it has not been widened or deepened so as to take any more water from the river than at the date of the decree. I find no evidence in the record of the actual depth of the ditch either at the time of the decree or since. Mr. Foster, an engineer who made a survey and some measurements in 1899, two years before the decree, says that the ditch from the headgate east was then about 2½ feet deep, but there is no evidence of its depth at the date of the decree, or that it had not been changed or deepened between the time of Foster's examination and the decree, nor is there any evidence in the record of its depth at the present time. Gilcrest, the complainant's manager, testifies that a short time before he was called as a witness he measured the headgate, and found it to be 4 feet and 8 inches deep, but Clarke says that the bottom of the headgate, as originally put in, was 2 feet below the bottom of the ditch, so that Gilcrest's testimony cannot be taken as evidence of the actual depth of the water."

In respect to the alleged violation by Hanley of the original decree in changing the channel of the river near the Orphan's headgate, and the illegal construction by him of two dams in the east fork of the river below the drain ditch, it is sufficient to say that the record shows that they were the subject of investigation in the contempt proceed-

ings already referred to, and subsequent to which and long before the commencement of the present suit Hanley removed those dams and restored the river to its original channel.

In respect to the ditches leading out of the west side of the east fork of the river through which Levens and Hanley were by the original decree permitted to take sufficient water from that fork for the irrigation of their lands therein specifically described, we are of opinion that the evidence shows that those provisions of the original decree have been evaded by both Hanley and Levens in the taking therefrom of more water than was necessary for the purpose permitted, such excess being used by Hanley, and permitted by Levens to be so used by him, on land upon which by the original decree it was forbidden to be used. In that respect the decree appealed from must be modified.

With respect to the drain ditch, counsel for the appellant insist that it is and has been kept open by Hanley at all stages of the river, "draining even the stock water away from the complainant at the lower stages of the river," and that it practically diverts the main body of the water of the east fork of the river at all times, except when the water of the river is high.

Recurring to the original decree, we repeat the provision in respect to the drain ditch. After conferring, in its eleventh subdivision, upon Hanley the right to maintain his dam in the east fork of the river on section 21 and to divert such quantity of the water thereof at that point as is necessary for the irrigation of the lands therein specifically described, the original decree proceeds as follows:

"That the said W. D. Hanley may maintain his ditch constructed across a portion of the land above described leading out of the east fork of Silvies river on the east side thereof on the S. ½ of section 27 above described, and extending southeasterly until it enters into and upon the land of the complainant on or near the S. W. ¼ of the S. E. ¼ of section 26, township 23 S., range 31 E., Willamette meridian, but shall maintain said ditch for the purpose of draining water from the surface of the land above described, and not for the purpose of irrigation. If at any time and while the dam of the said W. D. Hanley is open so that it does not obstruct the flow of the water in said river and from natural causes the waters of said east fork of Silvies river shall overflow its banks upon the land of the said W. D. Hanley, or naturally run through either of the ditches of the said W. D. Hanley leading from the dam of the said W. D. Hanley first above described, said defendant W. D. Hanley shall have the use and enjoyment of so much of the said water of said river as may come upon his land in the manner aforesaid, and during such time as the same may run thereon from natural causes and without any obstruction of the channel of said river."

Here is express authority for the maintenance of the drain ditch as then constructed from the east fork of the river extending southeasterly across the S. ½, of section 27 to the land of the complainant company at or near the S. W. ¼ of the S. E. ¼ of section 26, township 23 S., range 31 E., Willamette meridian, for the purpose of draining water from the surface of the lands of Hanley therein specifically described, and an express inhibition against the use by Hanley of any of the water of the drain ditch for irrigation purposes that is thereby taken from the river; the next clause of the same sub-

division of the original decree providing, in effect, that at any time the dam of Hanley in the east fork of the river on section 21 is open, and does not obstruct the flow of the water thereof, if "from natural causes the waters of said east fork of Silvies river shall overflow its banks upon the land of the said W. D. Hanley, or naturally run through either of the ditches of the said W. D. Hanley leading from the dam of the said W. D. Hanley first above described (the dam on section 21), said defendant W. D. Hanley shall have the use and enjoyment of so much of the said water of said river as may come upon his land in the manner aforesaid, and during such time as the same may run thereon from natural causes and without obstruction of the channel of said river."

It is manifest, therefore, that such overflow waters of the east fork of the river as may come upon Hanley's land while his dam is open and does not obstruct the natural flow of the river he is expressly given the use and enjoyment of, and while he is expressly inhibited from using the drainage ditch on section 27 for irrigation, or for any other purpose than of the drainage of the surface water from the specifically described lands, no other limitation is imposed in respect to the ditch or ditches through which he may use and enjoy such overflow waters from the east fork of the river.

The original decree, however, permits the maintenance by Hanley of his drain ditch for drainage purposes only and for the purpose of draining water from the surface of only certain specifically described lands of his. Beyond that limited purpose he is by that decree expressly enjoined from maintaining or using that ditch or any of the waters thereof; and it necessarily follows that neither Hanley nor his successors in interest have any right to thereby divert any water from the river when its waters are not so high as to make it necessary or proper by means of the drain ditch to drain surface water from the lands specifically described in the 11th subdivision of the original decree.

That Hanley clearly violated the provisions of the original decree by subsequently constructing in the drain ditch a stopgate and an outlet or tapgate by means of which he used some of the waters of that ditch for irrigation is shown by the testimony of Hanley himself, as well as that on the part of the appellant. The claim on his part that such acts were committed with the consent of the appellant, and resulted in no injury to it, was presented to and considered by the judge who rendered the original decree when Hanley was cited to show cause upon that, and other grounds, why he should not be punished for contempt. Subsequent to those proceedings and long before the commencement of this suit, the evidence shows he removed the stopgate from the drain ditch, and never thereafter used any of the water of that ditch for irrigation, but the evidence fails to show that he ever has removed from the said ditch the outlet or tapgate, which he must be compelled to do.

A careful consideration of the evidence further shows in our opinion that Hanley has, notwithstanding the provisions of the original decree, kept, and continues to keep, the headgate of the drain ditch

open at low stages of the water of the east fork of the river and at times when it was, and is, not necessary or proper to be kept open for the purpose permitted by the original decree, and in so doing has committed and does commit a clear violation thereof.

Foster, the appellant's engineer, testified that he measured that headgate in 1899, and that it was then 7 feet wide, and that at the time of testifying (the year after the commencement of the original suit) it was 12 feet and 5 inches wide. We find no evidence of its width at the time of the rendering of the original decree, but testimony on the part of the appellees to the effect that it has not been enlarged since that time. There is, however, uncontradicted evidence to the effect that the floor of the headgate is only 1.8 feet higher than the bottom of the river, and that the water thereof will, and does, flow into the drain ditch at practically every stage of the river when the headgate is left open.

For the reasons stated, the cause is remanded to the court below, with directions to modify the decree in accordance with the views above indicated, and, as so modified, it will stand affirmed, the parties to pay their own costs in this and the lower court.

GILBERT, Circuit Judge (dissenting). The construction of the drain ditch was begun in 1893 and was completed in 1896. It was constructed by Hanley and the appellant jointly, and for a purpose beneficial to each. For Hanley the purpose was to effect the drainage of 1,500 acres of tule land belonging to him, and, to accomplish this, it was necessary to draw water from the river through the open ditch. The water now flows in the ditch as it did from the first, though the lands of Hanley, and is delivered upon the lands of the appellant in section 36, and in the delivery of the water upon said lands of the appellant is and has been from the first the benefit to it which it sought from the construction of the ditch. In the original bill which was filed in October, 1899, there was no allegation that in maintaining the ditch Hanley had infringed upon the rights of the appellant. From the time when the ditch was constructed to the time of the commencement of that suit, it is not disputed that the ditch was maintained just as it is at the present time. The final decree in that suit which was rendered in December, 1901, so far as it affected the ditch, was based upon the stipulation of the parties. That stipulation provided that Hanley might "maintain" the ditch, describing it, and added:

"But he shall maintain said ditch for the purpose of draining water from the surface of the land above described and not for the purpose of irrigation."

The decree followed the language of the stipulation in regard to the maintenance of the drain ditch, but elsewhere it contained a general injunction, enjoining the defendants including Hanley "from impeding the flow of any of said water to and upon the lands of the complainant hereinbefore described as said water has heretofore been wont to flow thereon when not interfered with by the said defendants." One of the tracts of the complainant's lands so de-

scribed is the section 36, upon which the water of the drain ditch is delivered. For five years before the date of the decree water through that ditch had been "wont to flow" upon the land of the appellant without interference by Hanley and without objection by the appellant, and presumably it flowed in accordance with the purpose and to accomplish the result for which the appellant had aided in the construction of the ditch.

It is not contended in the present suit that Hanley maintains or uses the ditch in any way other than that in which it was maintained and used prior to and at the time of the original suit and the original decree. It is undisputed that, after that decree, Hanley maintained the ditch in the same manner until in 1903, when he put a dam and tapgate therein for the purpose of irrigation, which act became the basis of the contempt proceedings. In those proceedings, the sole violation of the final decree that was charged against Hanley was that he had put in the headgate and the tapgate for irrigation purposes. There was no allegation that he had violated the decree by leaving his drain ditch open in the extreme low stages of the water in the year 1902. Evidently the appellant did not at any time before the present suit was brought regard that act as a violation of the terms of the final decree. If the appellant had regarded the act of Hanley in leaving the drain ditch open a violation of its rights, it is too clear to require discussion that it would have sought a provision in the original decree commanding Hanley to close the headgate of the ditch at extreme low stages of water in the late summer or early fall. As it was, however, it stipulated that the ditch might be maintained for drainage with the single prohibition that it be not used by Hanley for irrigation, or, in other words, that Hanley should do nothing to impede the flow of the water on through the ditch to the appellant's land as it had been wont to flow. It is not now charged that Hanley has used the ditch for irrigation, but that he has failed to close it when it is no longer needed for drainage purposes. But so far as the interests of the appellant must have appeared to Hanley to demand protection by the court, and so far as it appears from the original decree and the record up to the time of the commencement of this suit, it was more important to the appellant that the drain ditch be maintained as it was and as it had been used without objection so as to deliver water on the appellant's land in section 36 than it was that at low stages of water in the river the headgate to the ditch should be closed in order to turn the whole volume thereof down the bed of the stream. And, indeed, if Hanley had construed the final decree as permitting or requiring him to maintain the ditch otherwise than it had been maintained, and if he had in fact impeded the flow of water therein at low stages of the river as it had been "wont to flow," he would have furnished far more plausible ground for proceedings against him for contempt than he did by the course which he pursued. There is not a word of testimony to indicate that at any time before the present suit was commenced the appellant ever complained of the manner in which the ditch was maintained. Hanley testified that,

if there was any time that they "would make a complaint by making their wants known, I would be only too glad to get the water to them." With such a record before us, I think it most unjust to charge Hanley with a violation of the terms of the original decree by maintaining the ditch in the manner in which it is used, which is the way in which it has been used from the time of its construction. The court below aptly said:

"It is suggested that the drain ditch has remained open all seasons of the year, carrying the water away from the east fork, both flood waters and water after it was confined to the banks of the river, and that in some way Hanley ought to control the water flowing into the head of the ditch, so that a sufficient amount may come down the river to supply the complainant's needs on land belonging to it, but there is no provision in the decree requiring Hanley to do anything of the kind, and since the drain ditch discharges its waters onto land belonging to the complainant in 36, and is there used by it, it is quite probable that if Hanley attempted to control the flow of the water in the ditch at its head, except when necessary for drainage purposes, an objection would be made by the complainant."

Nor do I think that the court below was in error in holding upon all the evidence that Levens had used no more water through his dam or ditches than he was entitled to use under the original decree. I submit that the decree should be affirmed.