PACIFIC LIVE STOCK CO. v. SILVIES RIVER IRR. CO. et al.

(Circuit Court of Appeals, Ninth Circuit.    November 1, 1912.)

No. 2,029.

1. WATERS AND WATER COURSES (§ 87*)—SUIT TO DETERMINE WATER RIGHTS —ISSUES.

In a suit by a riparian owner on a stream to enjoin the diversion of water therefrom by defendants, a decree granting a perpetual injunction, but leaving it open to defendants to apply for its vacation on establishing their right to water in other proceedings, is erroneous as inconsistent, and not determinative of the question at issue.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 77–81, 83, 89, 90; Dec. Dig. § 87.*]

2. WATERS AND WATER COURSES (§ 87*)—SUIT TO DETERMINE WATER RIGHTS —PARTIES—OREGON STATUTE.

The Water Code of Oregon (Act Feb. 24, 1909 [Laws 1909, p. 319]) creates a board of control, with authority on petition of a user of water from a stream after a hearing on notice to all other users or claimants to determine the respective rights of all parties, subject to review on exceptions by the court in which the order of the board is to be filed. It also authorizes any court in which suit is brought to determine water rights in its discretion to transfer the case to the board of control for determination. *Held* that, in view of such statute, a federal court in which such a suit was brought to enjoin defendants therein from using waters of a stream should require the parties to proceed under the act, or to bring in all other persons in interest as parties.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 77–81, 83, 89, 90; Dec. Dig. § 87.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the District of Oregon.

Suit in equity by the Pacific Live Stock Company against the Silvies River Irrigation Company and the Harney Valley Improvement Company. From the decree, complainant appeals. Reversed.

The pleadings are fairly stated by counsel for appellant. The bill of complaint alleged that complainant was the owner of a large tract of land situate in Harney valley, Harney county, Or.; that the land lies along and is riparian to the Silvies river and its branches and forks; that on said land are numerous sloughs, minor channels, and swales, which put out from the main channel of the river and its forks, and the waters of said river and its forks, and of said sloughs, minor channels, and swales naturally flow upon and through said land; that the climate of said Harney valley is dry, and the soil is naturally arid, except as it is watered by or from said river; that the land of complainant is best adapted to the growth of grass, hay, and pasture; that during the last 10 years complainant has raised, mowed, and cured a large quantity of natural grasses growing on said lands for hay, and has used the remainder of said natural grasses for pasture, for the support of large numbers of cattle; that complainant is entitled to the full, regular, and natural flow of the water of said river at all stages of the flow of the waters therein, subject only to the vested rights of other riparian owners on said stream; that very often the flow of said waters is not sufficient in quantity for irrigation of said lands; that the flow of said waters to and upon said lands is at all times very beneficial to said lands, and adds very greatly to the productiveness and fertility thereof, and gives said lands the greatest element of their value; that, if the flow of said waters is taken away from said lands, said lands will become arid and greatly diminished in value; that the annual rainfall on said lands is small in quantity; that said lands, unless irrigated otherwise than by the natural rainfall, will not produce sufficient vegetation, and will not enable complainant to pasture its cattle thereon; that during the spring months of every year there is a large increase in the volume of water flowing down said Silvies river, caused by the melting of the snow in the watershed of said river; that the annual increased flow of water coming down said river at such times has from time immemorial caused said river in the various channels thereof to overflow and to cover with said overflow a large portion of the lands of complainant for a limited period of time each year; that said waters so overflow on account of the slight slope of the lands in said Harney valley; that the water causing and constituting such overflow has in each year brought large quantities of silt and material to said lands from the mountains and ravines through which said river and its tributaries flow in their course to said lands of complainant, and deposited said silt and material on complainant's lands, and thereby fertilized and enriched said lands, and caused said lands annually to yield increased crops of grasses and feed for complainant's stock, and has largely increased the value of said lands; that without such overflowing said lands would have produced little or no feed or crops, unless said lands were artificially irrigated; that during the lowest stages of the flow of the water of said Silvies river and its various channels the waters thereof are confined to and flow within the banks of the same; that, when the flow of the waters of said river increases in each year as aforesaid, such increased flow thereof naturally flows over and covers the meadow lands adjacent to the channels of said river; that said overflow waters, together with the waters confined within the banks of said channels of said river, flow in a definite southeasterly direction through said lands of complainant, and that, when the volume of water flowing through said channels of said river diminishes in the summer months of each year, so much of the overflow waters as have not been consumed in irrigation gradually recede to and within the banks of the various channels and waterways of said river.

The complaint further alleges that in the month of October, 1907, the defendants commenced the construction of a ditch taking out of the river, 6

feet deep, 40 feet wide on the top and 22 feet wide on the bottom, with a grade of 4 feet to the mile, with the intention of diverting a large volume of water above the land of complainant; that none of the water so threatened to be diverted will ever return to the river, and all thereof will be prevented from flowing to said land, and will be wholly lost to complainant; that the capacity of said ditch is intended to be such that the same will be sufficient to divert all of the waters of said river after the spring flow has subsided; that, by reason of such diversion, complainant will be deprived of the valuable and increased crops, feed, and pasture on said land, and said lands will be greatly deteriorated in quality and greatly depreciated in value; that such diversion at any time during any of the stages of the flow of said river will cause great and irreparable damage and injury to complainant; that all of said water is actually needed and used by complainant for the irrigation of its lands, for water for its stock, and for domestic use; that without said water said lands will not be supplied with water sufficient for the production of crops, feed, and pasture thereon, or for watering of stock, or domestic use; that, if said waters are diverted, the crops will dry up and be destroyed, and complainant will not receive the water which it is entitled to receive as a riparian owner for the irrigation of its lands and for such other purposes as a riparian owner is entitled to use the same; that it will be impossible to estimate the value of the crops, feed, and pasture of which complainant will be deprived, or the amount of the decrease in the value of said land.

The prayer was that defendants be enjoined from diverting any water from the river above the lands of complainant.

The defendants' answer alleged that in the spring of the year the natural flow in Silvies river is much more than sufficient for the use of complainant on said lands and much greater than any use to which complainant has ever put such full spring flow of the river, and is greater than any use which complainant can put said waters to on said land; that at times the flow of water is so great as to be a detriment; that defendants have good and lawful right to divert the surplus and excess flood waters of Silvies river by reason of appropriations of such surplus flood waters; that no water to which complainant has any claim of right will be diverted by respondents, but that respondents will divert only the surplus and excess flood waters, and that complainant will receive all the water which it now has received to its beneficial use on said lands, and will not in any way be injured by the ditch and diversion of flood water contemplated by respondents, deny that respondents will divert any waters to which any one has a vested right, but aver that they will divert only the excess spring flood water which goes to waste and is a detriment.

The answer further disclaims any right or color of right or intention to take any water whatever to which any one has any vested right prior to the filing of the appropriation by defendants; that they only claim to appropriate so much of the water as is not already appropriated by any one, and the intention of respondents is to carry off the surplus waters to which no one has right or title, and which go to waste and form, together with other water, the Malheur marshes and lake, and that they have not intended and do not now intend to take any water which any one has put to a beneficial use, and disclaim any intention to invade the legal rights of any one, but only claim and intend to use such water as no one else is putting to a beneficial use; that there is a great surplus of flood water and surplus water in Silvies river which has not been beneficially used by complainant or by any one, but which goes to waste; that if upon actual trial it shall prove that respondents deprive complainant, or any one, of any water heretofore beneficially used by complainant or by any one, then these respondents disclaim any right to such water so put to a beneficial and prior use by complainant or any one, and agree to modify their plan, or, if necessary, discontinue it altogether, so that the acts of respondents may not conflict with the established rights of others.

The evidence taken in the present case not having been brought up, the appellees submitted a motion that it be required to be certified to this court,

and also moved that the appeal be dismissed. There was, however, a stipulation entered into by the respective parties that the evidence contained in the record in the suit of Pacific Live Stock Co. v. W. D. Hanley et al. (No. 2,036) 200 Fed. 468, just disposed of, be considered by the court on the present appeal.

Wirt Minor, of Portland, Or., and Edward F. Treadwell, of San Francisco, Cal., for appellant.

Williams, Wood & Linthicum and Lionel R. Webster, all of Portland, Or., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] As appears from the pleadings, the sole question between the parties to this cause is whether there are surplus waters of the Silvies river during the times of high water, and, if so, whether the appellees have the right to divert them for the purpose of irrigating land not riparian to the stream.

It sufficiently appears from the evidence in the case of Pacific Live Stock Co. v. W. D. Hanley et al. (No. 2,036) 200 Fed. 468, just decided, which by stipulation of the parties is added to the record herein, that in the spring time during the melting of the snows the river brings down from the mountain enormous quantities of flood waters; and that the quantity thereof is so great as to be at such times beyond the needs of the appellant or any of the other riparian proprietors upon the river would seem to be conclusively shown by the fact, appearing from the evidence to which reference has been made, that they create more than 6,000 acres of swamp and tule lands upon the appellant's tracts, as well as furnish the larger part of the waters of Malheur Lake in the southern part of Harney valley. And while in the findings of the court below in the present suit there is this finding:

"All of the water of Silvies river is necessary for the irrigation of the complainant's lands and the lands of others irrigated from the waters of said river as above described, and which are annually irrigated by the waters of said river if undisturbed, and by the diversion contemplated by the defendants of the water of Silvies river, the complainant and others owning lands irrigated from said river as above described will be deprived of valuable feed and crops, their lands rendered less valuable, and the complainant will be greatly damaged and injured"

—there is this also in its opinion filed along with its findings and decree:

"The defendant company plans to intercept the flow of the water near the head of the valley and divert it from the watershed to irrigate arid lands to the east. The complainant and other parties own large quantities of valuable land naturally irrigated from the river below the point of the defendant's proposed diversion, and the object of this suit is to prevent such diversion. The defendants claim the right to take the surplus water only and disclaim any intention of interfering with the rights of any of the settlers. But it is not shown that there is any surplus water. Indeed, the evidence in this case tends strongly to support the complainant's position that all the water is necessary for the irrigation of the land in private holdings, and which is annually irrigated by the overflow if undisturbed. Until it is adjudicated in some appropriate proceeding that there is a surplus of water

and the quantity thereof, I do not think the defendant should be permitted to interfere with the natural flow, and thus invite numerous lawsuits and controversies between it and the settlers. Decree will therefore be entered as prayed for in the bill, but a provision may be inserted at the foot thereof, reserving the right to the defendants to apply for a vacation of the injunction if it should hereafter be determined that there is any surplus water subject to appropriation by it."

In accordance with the views thus expressed by the trial judge, he added at the end of the decree enjoining the appellees from diverting any of the waters of the river the clause from which the present appeal is alone taken, which clause reads as follows:

"It is further considered, ordered, adjudged, and decreed that there be reserved to the defendants above named, and to each of them, the right to apply to this court at any time hereafter for a vacation of the injunction if it should hereafter be determined in some appropriate proceeding that there is any surplus water subject to appropriation by them or by either or any of them."

The decree having first perpetually enjoined the defendants from diverting any of the waters in question, the added clause rendered its provisions inconsistent and undeterminative of the only issue in the case.

[2] From the decree, taken in connection with the opinion, it is, we think, quite evident that the court below was of opinion that as between the appellant and the appellees certainly the river carried some surplus water during its high stages which should be left to future ascertainment. That being so, and the laws of the state of Oregon in force at the time of the decree appealed from recognizing the rights of riparian proprietors to a limited extent only, and providing for the right of appropriation of water of the nonnavigable streams of the state for beneficial uses, we are of opinion that the decree here in question should be reversed and the cause remanded for further proceedings in accordance with those laws. The latest state statute upon the subject, referred to as the Water Code, was enacted February 24, 1909 (Laws 1909, p. 319), and is entitled:

"An act providing a system for the regulation, control, distribution, use, and right to the use of water, and for the determination of existing rights thereto within the state of Oregon, providing penalties for its violation and appropriating money for the maintenance thereof, and declaring an emergency."

That act divides the state into two water divisions, provides for the division of each water division into water districts, creates a board of control, to consist of the state engineer and the superintendents of the two water divisions, provides for the appointment of a water master for each water district, and prescribes the duties of the respective officers. Among the numerous provisions of the act are sections 11, 12, 13, and 14, which read as follows:

"Sec. 11. Determination.—Upon a petition to the board of control, signed by one or more water users upon any stream, requesting the determination of the relative rights of the various claimants to the waters of that stream, it shall be the duty of the board of control, if, upon investigation, they find the facts and conditions are such as to justify, to make a determination of the said rights, fixing a time for beginning the taking of testimony and the

making of such examination as will enable them to determine the rights of the various claimants. In case suit is brought in the circuit court for the determination of rights to the use of water. the case may, in the discretion of the court, be transferred to the board of control for determination as in this act provided.

"Sec. 12. Notice of Proceedings.—The board shall prepare a notice, setting forth the date when the engineer will begin an investigation of the flow of the stream and of the ditches diverting water therefrom, and a place and a time certain when the superintendent of the water division in which that stream is situated shall begin the taking of testimony as to the rights of the parties claiming water therefrom. Said notice shall be published in two issues of one or more newspapers having general circulation in the counties in which such stream is situated, the last publication of said notice to be at least thirty days prior to the beginning of taking testimony by said division superintendent, or for the measurement of the stream by the state engineer, or his assistant. The superintendent taking such testimony shall have the power to adjourn the taking of testimony from time to time and from place to place, to suit the convenience of those interested.

"Sec. 13. Notice to Claimants.—It shall be the duty of said division superintendent to send by registered mail to each person, firm or corporation, hereinafter to be designated as claimant, claiming the right to the use of any of the waters of said stream, and to each person, firm or corporation owning or being in possession of lands bordering on and having access to said stream or its tributaries, in so far as such claimants and owners and persons in possession can reasonably be ascertained, a similar notice setting forth the date when the state engineer or his assistant will begin the examination of the stream and the ditches diverting the waters therefrom, and also the date when the superintendent will take testimony as to the rights to the water of said stream. Said notice must be mailed at least thirty (30) days prior to the date set therein for making the examination of the stream or the taking of testimony.

"Sec. 14. Statement of Claimant.—The division superintendent shall, in addition, inclose with said notice a blank form on which said claimant or owner shall present in writing all the particulars necessary for the determination of his right to the waters of the stream to which he lays claim, the said statement to include the following:

"The name and postoffice address of the claimant.

"The nature of the right or use on which the claim is based.

"The time of initiation of such right or the commencement of such use, and if distributing works are required.

"The date of beginning of construction.

"The date when completed.

"The date of beginning and completion of enlargements.

"The dimensions of the ditch as originally constructed and enlarged.

"The date when water was first used for irrigation or other beneficial purposes, and if used for irrigation, the amount of land reclaimed the first year, the amount in subsequent years, with the dates of reclamation, and the amount and general location of the land such ditch is intended to irrigate.

"The character of the soil and the kind of crops cultivated, and such other facts as will show a compliance with the law in acquiring the right."

Provision is also made for the taking of testimony and a hearing thereon, the determination by the board of control of the several rights to the waters of the stream, the issuance of water certificates in accordance with such determined rights, the filing of the evidence and order of the board of control in the circuit court of the state, after which section 26 of the act provides:

"The proceedings shall be as nearly as may be like those in a suit in equity, except that any proceedings, including the entry of a decree, may be had in vacation with the same force and effect as in term time. Within

thirty days from the filing of such evidence and order in the circuit court, or within such further time as the court may for good cause allow, any party may file exceptions to the determination. If no exceptions shall be filed, the court shall on the day set for hearing enter a decree affirming the determination of the board."

Sections 30 and 34 of the act are as follows:

"Sec. 30. Rehearing.—Within six months from the date of the decree of the circuit court determining the rights upon any stream, or if appealed within six months from the decision of the Supreme Court, the board of control, or any party interested, may apply to the circuit court for a rehearing upon grounds to be stated in the application. Thereupon, if in the discretion of the court it shall appear that there are good grounds for the rehearing, the circuit court, or judge thereof, shall make an order fixing a time and place when such application shall be heard. The clerk of the circuit court shall, at the expense of the petitioner, forthwith mail written notice of said application to the board of control and to every party interested, and state in such notice the time and place when such application will be heard."

"Sec. 34. Duty of Water Right Claimants.—Whenever proceedings shall be instituted for the determination of the rights to the use of any water, it shall be the duty of all claimants interested therein to appear and submit proof of their respective claims, at the time and in the manner required by law; and any such claimant who shall fail to appear in such proceedings and submit proof of his claims shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the stream or other body of water embraced in such proceedings, and shall be held to have forfeited all rights to the use of said water theretofore claimed by him. Any person, association or corporation interested in the water of any stream upon whom or which no service of notice shall have been had of the pendency of proceedings for the determination of the rights to the use of the water of said stream, and who or which shall have no actual knowledge or notice of the pendency of said proceedings, may at any time prior to the expiration of one year after the entry of the determination of the board, file a petition to intervene in said proceedings. Such petition shall contain, among other things, all matters required by this act, of claimants who have been duly served with notice of said proceedings and also a statement that the intervener had no actual knowledge or notice of the pendency of said proceeding. Upon the filing of said petition in intervention, the petitioner shall be allowed to intervene upon such terms as may be equitable, and thereafter shall have all rights vouchsafed by this act to claimants who have been duly served."

There are numerous other provisions of the act of the state not necessary to be here mentioned.

In the view we take of the case, it is unnecessary to order the evidence asked for by the appellees to be brought here, and their motion to dismiss the appeal is denied.

The judgment is reversed and the cause remanded, with directions to allow the parties a reasonable time to take proceedings under the above-mentioned statute of the state of Oregon and in the event they do not proceed thereunder within a reasonable time to require all parties in interest to interplead herein, and then to proceed to a determination of the issues between them in accordance with the laws of the said state.