AMALGAMATED SUGAR CO. v. HEMPE et al.

(District Court, D. Oregon. August 23, 1915.   On Rehearing, November
22, 1915.)

No. 3819.

1. WATERS AND WATER COURSES ⟨⟩≈156—CONSTRUCTION OF CONTRACTS AND
CONVEYANCES.

Complainant constructed an irrigation ditch through lands belonging
to E., and in consideration of the granting of the right of way agreed
that E. should have the right to take water from the ditch to irrigate his
land, through which it extended.   E. owned a tract of 144 acres, through
which the ditch ran, and another tract of 240 acres, joining the first tract
at the corners for a few rods.   He conveyed both tracts in two parcels
to M.   Held that, where it was the intention of the agreement between
complainant and E. that E. should have the right to divert water from
the ditch for use upon both tracts, M. was entitled to this same privilege.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§§ 158, 174–183; Dec. Dig. ⟨⟩≈156.]

2. WATERS AND WATER COURSES ⟨⟩≈140—APPROPRIATION OF WATER—PRIOR-
ITY.

Complainant extended an irrigation ditch without giving notice of the
intended enlargement of the appropriation, and defendants constructed a
new ditch without giving notice of the intended appropriation.   Com-
plainant's use by the extension was prior in time to any use through de-
fendants' ditch.   Held, that complainant's extension was entitled to pri-
ority over defendants' ditch, since, where notice is not posted as required
by law, the rights of the appropriators attach and become vested in the
order of time in which the water is diverted and appropriated.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig.
⟨⟩≈140.]

3. WATERS AND WATER COURSES ⟨⟩≈240—IRRIGATION DITCHES—RIGHTS OF
PARTIES—ACQUIESCENCE.

Where the successors in interest of the party constructing an irriga-
tion ditch, before a dispute arose with complainant, over whose land it
was constructed, and who had been using water from such ditch for irri-
gation purposes, were willing to concede to complainant a joint use of
the ditch, they would be held to that aspect of the case.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig.
⟨⟩≈240.]

4. WATERS AND WATER COURSES ⟨⟩≈133—APPROPRIATION OF WATER—PRIORITY.

Where notice of appropriation of water from a stream is posted as re-
quired by law, the appropriation, when diversion is made and use accom-
plished, will relate back to the time of posting the notice, providing the
work of diversion and use has been carried forward with reasonable dili-
gence.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 146; Dec. Dig. ⟨⟩≈133.]

5. WATERS AND WATER COURSES ⟨⟩≈152—ACTIONS TO DETERMINE RIGHTS—
REFERENCE TO BOARD OF CONTROL.

Laws Or. 1909, p. 327, authorizes the board of control, on petition of
water users on any stream, to determine the relative rights of the vari-
ous claimants, and provides that, if suit is brought in the circuit court for
the determination of such rights, the case may in the discretion of the
court be transferred to the board of control for determination.   Section
26 provides, relative to procedure after the filing of the evidence and the
order of determination in the circuit court, that the proceeding shall be

⟨⟩≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as near as may be like those in a suit in equity, and that the court may, if necessary, remand the case for such further evidence to be taken by the superintendent of the water division as it may direct, and may require a further determination by the board. *Held*, that where, in a suit in the federal court involving the rights of numerous parties to waters from a creek and complainant's right to damages for wrongful diversions of water, the evidence, though voluminous, did not furnish the data whereby it could be accurately and fully determined to what quantity of water each party was entitled, and a full and reasonably accurate adjustment of the many conflicting water rights made, and there were parties, not parties to the suit, entitled to the use of water, the case, after the question of damages was determined, would be referred to the board of control; it being the peculiar province of that board to determine such matters.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. ⬅︎152.]

### On Rehearing.

6. WATERS AND WATER COURSES ⬅︎140—APPROPRIATION—PRIORITY.

Priorities of water appropriations, instituted without posting notice, relate back to the time of beginning work on the project for diversion (such as the commencement of the dam or ditch or flume, or other appliances through which the appropriation is to be effected), provided the enterprise is prosecuted with reasonable diligence.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. ⬅︎140.]

In Equity. Suit by the Amalgamated Sugar Company against Frank Hempe and others. Damages awarded complainant, and case referred.

C. H. Finn, of La Grande, Or., for complainant.

B. F. Wilson, of Union, Or., and C. E. Cochran, of Portland, Or., for defendants.

WOLVERTON, District Judge. The complainant is the owner in fee of a large amount of land, consisting of about 2,500 acres, situate in Union county, Or., in the vicinity of the town of Union, through the main body of which flows a perennial stream of water known as Catherine creek. Nearly the whole of this body of land is susceptible of irrigation from Catherine creek. The complainant, at the time this suit was instituted, was engaged in the manufacture of sugar from sugar beets grown upon a portion of the lands held by it, and in the production of other crops, such as hay and grain of different kinds. Complainant claims that irrigation is necessary for the production of its crops upon such lands, and that it and its predecessors have made several diversions and appropriations of water from Catherine creek, and have applied the same to a beneficial use. Numerous parties have been made defendants, all of whom are owners of or interested in water rights acquired by diversion and use from Catherine creek (save a right claimed by James H. Hutchinson and Wm. R. Hutchinson, through Godley ditch No. 2) at points on the stream above the diversion claimed by complainant. The ditches by which these diversions are made, using the names by which they are popularly known, may be enumerated as follows: Swackhamer-Schoonover-Hutchinson ditch, Swackhamer ditch, Nodine ditch, Hutchinson-McLean ditch,

Godley ditch No. 1, Townley Dobbin ditch, Red Mill ditch, Dobbs ditch and Dobbs slough, Hutchinson-Sebelove ditch, Coffin ditch, Hempe-Wright-Hutchinson ditch, Hutchinson-England ditch, and Godley ditch No. 2.

Complainant complains generally that the defendants have wrongfully diverted water from Catherine creek above its lands, and deprived it of the use of the same, to its damage, in the years 1910 and 1911, in a large sum of money. At the trial of the cause, however, it was conceded that all these ditches are prior in right to the diversions of complainant, except the Hempe-Wright-Hutchinson ditch, the Godley ditch No. 2, and an alleged enlargement of the Swackhamer-Schoonover-Hutchinson ditch. The complainant claims that it has a right to diversion and appropriation from Catherine creek through five sources, namely: The Sugar Beet Irrigation Company ditch, the Godley ditch No. 2, the Stoddard ditch, the Mike ditch, and the Perley ditch.

[1] The Sugar Beet Irrigation Company's ditch was taken out in 1903, and construction was completed in 1904, early enough to obtain the use of water for irrigating beets in the summer of that year. The ditch makes its diversion through the west bank of Catherine creek in the S. E. ¼ of the N. E. ¼ of section 15, township 4 S., Range 39 E. W. M., and covers a large area of land belonging to the complainant on the west side of the stream. The ditch was at the time of diversion constructed through lands belonging to A. E. Eaton, and, in consideration of the granting of the right of way for its construction, the Irrigation Company agreed with him that he should have the right at all times to take water from the ditch, at any point thereon that he might select, to irrigate his land through which it extended. The complainant has succeeded to the rights of the Irrigation Company as to its interest in this ditch. Of this there seems to be no controversy.

S. E. Miller, who is a defendant in the cause, owns a tract of land in section 15, containing 144 acres, which he acquired from Eaton subsequent to the date of the construction of the Irrigation Company's ditch, and through which the ditch runs. He also owns another tract in sections 9 and 10, containing 240 acres, which he acquired from Eaton. The ditch does not run through this tract, although Eaton owned both tracts, which join by the space of a few rods at the northwest and southeast corners. Miller is claiming the right, by reason of the provision above alluded to in Eaton's grant of right of way to the Irrigation Company, to divert water from the ditch for use upon both these tracts. I am persuaded that the intendment of the agreement vouchsafed to Eaton this privilege, and, he having conveyed the land, although in two parcels, to Miller, that Miller is likewise entitled to the privilege. This right of Miller is not an exclusive right, but a joint right with the complainant.

[2] The testimony gives no definite information touching the amount of water diverted by this ditch or canal; but, as it relates to complainant, it covers practically all the lands of the company situated on the west side of Catherine creek, including the part of the Hall farm.

lying upon that side. There has been some extension of the canal to cover that portion of the Hall farm lying west of the creek, made in 1905. There is a controversy as to priority, as it relates to such extension, over the Hempe ditch. I resolve the controversy in favor of complainant, on the ground that the extension was made and the water applied prior to the time when water was applied through the Hempe ditch. In neither instance was there notice of an intended appropriation, or an intended enlargement of an appropriation consummated, and the complainant's use by the extension was prior in time to any use through the Hempe ditch. The subject will receive further discussion in reference to the controversy touching the earlier appropriation, as between the Hempe ditch and the Godley No. 2 and Stoddard ditches.

[3] Godley ditch No. 2 and the Stoddard ditch may be discussed in the same relation. The Godley ditch is the earlier of the two, and has its diversion through the east bank of Catherine creek, near the northeast corner of the S. E. 1/4 of the S. W. 1/4 of section 3, township 4 S., range 39 E. W. M. It was taken out by Wm. M. Godley, with the consent of Fred Nodine, the predecessor in interest of Hall Bros., who sold to the complainant; the deed passing from them to complainant April 21, 1905. Godley was the owner at the time of the diversion of the E. 1/2 of section 23, and the N. E. 1/4 of section 26, township 3 S., range 39 E. W. M. James H. and William R. Hutchinson succeeded to these lands by deed of date April 26, 1892. Prior thereto Wm. R. Hutchinson and James H. Hutchinson became the owners from Stuart Hibbler and wife of the S. W. 1/4 of section 26 and the N. W. 1/4 of section 35, and from E. C. Brainard of the N. E. 1/4 of section 35 and the S. E. 1/4 of section 26, same township. One or the other of these Hutchinsons became or was the owner of other lands in sections 22 and 27, same township, and subsequently, by an exchange of lands, one or the other, or both, became interested in all these lands, either jointly or severally. By reference to the plat it will be seen that none of these lands are riparian to Catherine creek.

The Hutchinsons are claiming appropriation, however, from Catherine creek through the Godley ditch No. 2, for their irrigation, by reason of being successors to Godley in his lands, and, as appurtenant thereto, the Godley ditch appropriation. This comprises, of course, an enlargement of the primary Godley appropriation. The Hall Bros., after succeeding to the Nodine lands, without doubt used water from the Godley ditch No. 2 for irrigation purposes, and this with the full and free assent of the Hutchinson Bros. The Hall Bros.' lands were transected by numerous ditches. These ditches were at times used for drainage purposes during the flood season. But they were also used for the purpose of irrigating their meadows, and finally, when the complainant became the owner of the Hall Bros.' farm, they were used for irrigating beets and grains, as well as grasses. Furthermore, the water was used by complainant from said ditch, especially after the acquirement of the Hall farm, for like purposes on the Nichols farm, which lies north of and contiguous to the Hall farm. The deed given by Hall Bros. to Hutchinson Bros., confirmatory of Hutchinson

Bros.' interest in or ownership of Godley ditch No. 2, and which was lost, is in a way confirmatory of Hall Bros.' right to use the ditch. Touching the execution of the deed, Mr. Lomax, who drew it, says:

"As I remember it, that the Hall Bros. would by doing that get a little better grade for a portion of the ditch, because it was a long ditch, and at one corner it was not very much grade, and that and the easement to maintain the old Godley ditch as then located, and to use the crooked slough, they got the right by this deed I am speaking about to make some extension."

This deed was signed in the summer of 1899. Hempe tells of Nodine using water for irrigation on the Hall farm by diverting the water by means of putting a log across the creek, but says that the Godley ditch was the only one on that side of the stream. Bramwell says, speaking of the Godley ditch:

"So far as I know, there has never been any question. We always considered Hutchinsons had a right, and when they wanted the water we mutually agreed. We really had the management of it, because they have not used a great deal, not near so much as we did. * * * The relations between Mr. William Hutchinson and Mr. James Hutchinson and us have always been very friendly, and we have tried to accommodate each other pro and con always."

At another place Bramwell says:

"That is the understanding we had, that we had an equal right with the Hutchinsons, and so far as I know we have never questioned each other's rights to use that ditch."

The Hutchinsons dispute Bramwell's idea; but, from their acts and their treatment of the Godley ditch, I am impressed that, until this dispute arose, they were willing to concede to the complainant a joint use of this ditch, and they must be held to that aspect of the case.

The Stoddard ditch was taken out by the Stoddard Company, organized by complainant, and to inure, among other things, to the use of complainant. It takes its diversion between an eighth and a quarter of a mile south of the Godley ditch, from the east bank of the stream. It was surveyed about the time the complainant acquired the Hall farm on April 21, 1905, and the ditch was completed and diversion made during the spring, and water applied to the irrigation of beets, and perhaps other crops, that season. At the same time were surveyed and constructed ditches known as A and B, being laterals leading off from the Godley ditch No. 2 northward through the Hall place, and to and upon the Nichols place. These, with their laterals, were used for irrigation that season. The diversions in the Stoddard ditch and the Godley No. 2 are both made by the same dam, and the former intercepts the latter in a distance of less than a half-mile to the east. In reality, both ditches are used as one system, and feed the complainant's laterals used for irrigating the Hall and Nichols farms, as well as for carrying water on down and away to the Hutchinson Bros.' lands. From a careful view of the record, I conclude that the complainant and the Hutchinsons have, possess, and are entitled to a joint interest in these two ditches, with their diversions.

[4] In this relation, the question is presented whether the Hempe-

Wright-Hutchinson ditch appropriation is prior in time to the Stoddard ditch appropriation. Work was commenced on the Hempe-Wright-Hutchinson ditch, perhaps early in the spring of 1905, with a view to diversion and use; but it is conceded that diversion was not made until 1906, and, of course, use could not have been sooner been had. Both these appropriations were made without first posting notice of intention. Where such notice is posted as required by law, the appropriation, when diversion is made and use accomplished, will have relation back to the time of posting notice, providing the work of diversion and use has been carried forward with reasonable diligence. Nevada Ditch Co. v. Bennett, 30 Or. 59, 45 Pac. 472, 60 Am. St. Rep. 777. But, where there is no such notice, the rights of prior appropriators attach and become vested "in the order of time in which the water has been diverted and appropriated." Hough v. Porter, 51 Or. 318, 417, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728. Applying the principle here, the appropriation by the Stoddard ditch is prior in time and superior in right to that by means of the Hempe ditch, and must be so treated.

The Mike ditch takes its water from Catherine creek in the east bank some distance below the Godley ditch. While it may have existed previously, Mr. Black, for the complainant, utilized it in the irrigating season of 1905, and it probably covers 100 acres or less. This ditch also has priority over the Hempe ditch.

The Perley ditch is taken out of the west bank of the old channel of Catherine creek, in the S. E. ¼ of S. E. ¼, section 33, township 3 S., range 39 E. W. M. It was enlarged in 1905 by complainant, and water applied during the irrigating season of that year. This ditch also has priority over the Hempe ditch.

Now, as to the Swackhamer-Schoonover-Hutchinson ditch: This ditch has its diversion above all the ditches of complainant, and above the Hempe-Wright-Hutchinson ditch, and was primarily constructed in 1898. Complainant complains that it has been enlarged to its detriment in diversion of the waters of Catherine creek. Complainant has adduced much testimony tending to show an enlargement of the ditch in the year 1910. Much of it, however, is indefinite and conjectural. On the other hand, the testimony is much more specific, tending to show that there was no such enlargement as alleged. I am persuaded that the defendants have made the better case, and hold, therefore, that the diversion by the Swackhamer-Schoonover-Hutchinson ditch, in its present state and condition, is prior in time and superior in right to that by any of the complainant's ditches.

This disposes of the priorities as between the complainant's and defendants' diversions, except as to a diversion allowed by the state engineers on April 18, 1910, through the Swackhamer-Schoonover-Hutchinson ditch, to Keckritz, Levy, and Ratz. No one contends that this appropriation is not subsequent and inferior to all of complainant's diversions.

[5] I have purposely avoided any estimates or findings or suggestions relative to the quantity appropriated by any of the ditches and diversions, made either by the complainant or any of the defendants,

for the reason that I am unable from the evidence submitted, although voluminous, to determine satisfactorily as to that. I have not the proper data present whereby to be accurately and fully informed as to the quantity of water each person, individual, or corporation is entitled to have measured out to him or it, and hence am unable from this record to make a full and reasonably accurate adjustment of the many conflicting water rights involved. Furthermore, there are several, if not many, parties entitled to the use of water through some of these ditches, who are not made parties to the suit, and hence cannot, until they are brought in, have their specific rights adjusted, or be precluded from claiming that which they are not entitled to.

It appears that Catherine creek during the summer months affords a scant supply of water for the needs of the many users, and its use should be carefully and economically conserved, so that all, if possible, may be reasonably accommodated. Some of the parties are using water from two or more ditches. These uses will have to be relatively adjusted, and the amount of water to which appropriators are entitled will be governed by the nature of the soil, the kind of crops grown, the specific use to which the water is, and is to be, devoted, and the amount of appropriation made; and then there are the priorities to be adjusted as between all the users.

It is the peculiar province of the state board of control to determine in the first instance as to these things, and it would have been quite appropriate, had this cause been referred to it at an earlier date, save as it respects the element of damages involved. I am now authorized to make such reference (section 26 of an Act providing a system for the regulation, control, etc., and right to the use of water, etc. [Sess. Laws Or. 1909, p. 327]; Pacific Live Stock Co. v. Silvies River Irr. Co., 200 Fed. 487, 118 C. C. A. 513), and will do so on determining as to the question of damages.

That complainant suffered damages for need of water for the irrigating seasons of 1910 and 1911, especially for the latter year, there can be no doubt. The Hempe ditch diverted practically all the water in the stream coming down to it during the season of 1911, which amounted to about 98 inches. If this had gone on to complainant, complainant would have been materially relieved. I find that the complainant suffered damages to the amount of $1,000 on account of the Hempe ditch diversion, for which it will have a decree against Frank Hempe, David S. Kent, Mac Wood, R. A. Wilkerson, W. R. Hutchinson, James H. Hutchinson, J. D. Dobbin, and W. M. Dobbin, the owners thereof. Upon entry of this decree, the cause will be referred to the state water board for further hearing and findings touching the respective appropriations and rights of the parties to this suit, and such other parties as may make claim to diversion of water from Catherine creek in the locality concerned.

It is in evidence that the complainant has discontinued the beet culture, and therefore is not entitled to its appropriation for that purpose. But it has a right to change its use, it may be, to the growing of alfalfa, which requires summer irrigation as well as beets; and the board should take into consideration such a proposed change, if any, together with all the elements that go to make up a valid appro-

priation, in determining the amount of water to which complainant is entitled, and so of all the parties to this proceeding, as well as others interested who may ask to have their water rights settled and established.

## On Rehearing.

This cause is again before the court upon a rehearing which was granted.

[6] Upon further consideration, I am convinced that the rule adopted from Hough v. Porter, 51 Or. 318, 417, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728, to the effect that, where no notice is given, the rights of prior appropriators "attach and become vested in the order of time in which the water has been diverted and appropriated," was so adopted upon a misconception of the views of the learned commissioner who wrote the opinion in that case. Upon the contrary, the following is the rule established by the clear weight of authority, both in Oregon and in the federal Circuit Court of Appeals, Ninth Circuit, namely:

"In determining the question of the time when a right to water by appropriation commences, the law does not restrict the appropriator to the date of his use of the water, but, applying the doctrine of relation, fixes it as of the time when he begins his dam or ditch or flume, or other appliance by means of which the appropriation is effected, provided the enterprise is prosecuted with reasonable diligence." Union Mill & Mining Co. v. Dangberg (C. C.) 81 Fed. 73, 109; Miocene Ditch Co. v. Jacobsen, 146 Fed. 680, 682, 77 C. C. A. 106; Morgan v. Shaw, 47 Or. 333, 336, 83 Pac. 534; Hough v. Porter, 51 Or. 318, 427, 428, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728; Whited v. Cavin, 55 Or. 98, 104, 105 Pac. 396.

This entails some readjustment of the findings heretofore made.

In reality, what is termed the Stoddard ditch appropriation is but a change of diversion of the Godley ditch No. 2, and amounts to one and the same appropriation. The Godley ditch appropriation antedates the Hempe-Wright-Hutchinson appropriation by a long time. The former, as we have seen, is joint between the complainant and the Hutchinsons. The appropriation, however, as it relates to the complainant, extends to the Hall farm alone, and not to the Nichols farm, and complainant has a prior right of diversion over the Hempe-Wright-Hutchinson diversion through ditches A and B for use upon the Hall farm, and for the irrigation of the whole thereof, but not of the Nichols farm.

The Mike ditch is prior in time to the Hempe-Wright-Hutchinson ditch, and the quantity is sufficient for the irrigation of 100 acres.

The Perley ditch is subsequent in time to the Hempe-Wright-Hutchinson ditch, and the latter ditch has priority over the extension of the Sugar Beet Irrigation Company ditch on the west side of Catherine creek.

Otherwise, the findings remain the same as previously made, and the damages adjudged will be the same.